Cepha H. RITCH, Plaintiff, Respondent, v. INDUSTRIAL COMMISSION of Missouri, Division of Employment Security of Missouri, E. W. Leritz, d/b/a Warwick Delivery Service, Defendants, Appellants.

No. 22046.

Kansas City Court of Appeals. Missouri.

Oct. 4, 1954.

, George Schwartz, Lloyd G. Poole, Howard L. McFadden, Jefferson City, for appellants.

Robert A. Meyers, Kansas City, for respondent.

SPERRY, Commissioner.

Cepha H. Ritch, plaintiff, filed claim for unemployment compensation. The Commission disallowed the claim for a period of six weeks because of plaintiff's discharge for misconduct connected with his work. On appeal to Circuit Court it was held that plaintiff was entitled to benefits at the rate of $25 per week for the above period of six weeks, and remanded the case to the Commission with directions to allow same.

Plaintiff had been employed by E. W. Leritz, d/b/a Warwick Delivery Service for several years prior to his discharge. Defendant Leritz stated that there had been no previous difficulty regarding plaintiff's service.

Plaintiff testified to the effect that, on January 11, 1952, he went out to make deliveries; that he had some used motors to deliver in Kansas City; that he drove to the location given and had to double park; that the addressee refused delivery; that he moved the truck, parked in front of a tavern, and went inside to telephone his employer for instructions; that he first went to the rest room, came out and made a telephone call, but the line was busy; that he dialed again and got the wrong number; that he had no more change and went over to the bar and asked the girl for change; that Mr. Leritz came in; that he had had nothing to drink; that Mr. Leritz said: "You are fired"; that plaintiff was not seated; that his helper was present, talking to another person; that Leritz tried to hire a former employee, who was present, to drive the truck in; that plaintiff tried to explain but Leritz said he had all the explanation he needed; that he had never been warned about drinking on the job but did not drink nor permit his helpers to do so, although some helpers had reported drunk; that he frequently entered taverns to make deliveries; that he went to the union hall the next day and a union representative called the employers' office but was told that Leritz had gone to Florida; that he made no further effort to adjust the matter; that he was injured during his employment, in June, 1951; that he was off work more than one month and was paid for two weeks; that he has a compensation claim pending on account of such injury.

Mr. Neece, plaintiff's son-in-law, was in the tavern when plaintiff came in. He stated that plaintiff went to the rest room, came out, used the telephone, then came to the bar and asked the girl in charge for some nickels for the telephone; that plaintiff was standing by the bar, at the right of witness, when Leritz came in and said: "Go get your time, you are fired"; that plaintiff tried to explain but Leritz ignored him; that Leritz asked the witness to take the truck in but witness refused to do so because he had had several glasses of beer;

that witness had a partially consumed glass of beer on the bar, and another full glass, which he had just ordered, when Leritz came in; that Ritch did not take a drink.

Witness Upton had been in the tavern for some time, drinking near beer, when plaintiff came in. He said he noticed Ritch when he entered; that Ritch went to the rest room, came out and used the telephone; that he then came over and stood at the bar, a few feet from witness, and asked for change; that he did not drink anything, or order anything to drink; that Leritz "hit the door and said: 'You are fired'"; that he did not give plaintiff a chance to explain.

Mr. Leritz testified to the effect that plaintiff had worked for him for several years, driving a truck and making deliveries; that he had never had any trouble with him; that he had a rule against his employees drinking but had not talked to plaintiff about the rule; that he had a hiring contract with the union, of which plaintiff was a member. A copy of the contract was received in evidence and it contained the following clause: "* * * discharge for cause shall include, but shall not be limited to, discharges for * * * drinking while on duty, * * *."

Mr. Leritz stated that on the afternoon of January 11, he drove past the tavern, which is about six blocks from his place of business, and noticed the truck parked in front of the tavern; that he waited awhile, then went in; that Ritch was drinking a glass of beer; that he had it in his hand and was lowering it from his mouth and set it on the bar directly in front of him; that he had just set it on the bar in front of him; that he did not actually see him drinking but that he had his hand around the glass, which was half raised; that he said nothing until he was by plaintiff's side, when he said: "You know the rule. It is against the rules strictly to drink while on duty. You are through"; that plaintiff did not deny that he had been drinking; that he claimed he was making a telephone call to the office; that plaintiff's helper was

also sitting at the bar but was not drinking and that he was not fired; that Mr. Crane, the union spokesman, called him that afternoon and remonstrated against his firing a man for drinking one glass of beer.

The Commission's ruling herein is based on subsection 2, Section 288.050, RSMo 1949, as added by Laws of Missouri 1951, p. 564, V.A.M.S., which provides that a claimant " * * * shall be disqualified for waiting week credit or benefits for not less than one nor more than eight weeks for which he claims benefits and is otherwise eligible" if it is found that he has been discharged for misconduct connected with his work.

We find no Missouri decision construing the specific clause above-mentioned, nor do we find any decision defining what constitutes "misconduct connected with his work". However, in 48 American Jurisprudence, 541, the following appears:

"Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."

In Bates v. Unemployment Compensation Board of Review, 171 Pa.Super. 529, 90 A.2d 379, 380, it was held: "Appearing for work in an intoxicated condition is conduct sufficiently inimical to the employer's interest as to constitute willful misconduct." That decision was based on the case of Guede v. Unemployment Compensation Board of Review, 162 Pa.Super. 479, 58 A.2d 197, 198, where it was held that discharge for drinking while on duty, after warning, is justified as a discharge for misconduct and will justify denial of claim for compensation.

In the instant case, claimant had not been directly informed of the employer's rule against drinking while on duty, yet his testimony indicated that he knew that such conduct was improper, as, indeed, he should have known. He was a truck driver. He must have known that an employee should not drink intoxicating beverages while in the performance of his duties as an operator of a motor vehicle.

Further, the employment contract under which he worked was made for him, by his union. He will be held to have been cognizant of its terms. Under that contract he agreed that "misconduct" shall include drinking while on duty. In effect, he and his employer placed their own agreed construction on what should constitute "misconduct." Therefore, we hold that drinking while on duty constituted, in this case, misconduct connected with his work so as to justify plaintiff's dismissal for cause, and also justified application of the penalty mentioned in the statute.

The sole remaining question is " * * * upon the whole record, whether the Commission could have reasonably made its finding and reached its result." Division of Employment Security v. Industrial Commission, Mo.App., 242 S.W.2d 593, 597. A court may not substitute its judgment for that of the Commission, nor set aside the Commission's finding and order, unless it is clearly contrary to the overwhelming weight of the evidence.

There was strong, convincing and competent evidence tending to prove that plaintiff was drinking while on duty. Mr. Leritz testified to the effect that he saw plaintiff lower a glass of beer from his mouth and set it on the bar in front of him. He stated that he charged plaintiff with drinking while on duty and that plaintiff did not deny the charge.

True, there was competent evidence on behalf of plaintiff tending to prove that

plaintiff was not drinking. However, we cannot say that the Commission's direct finding on the question of fact herein presented is contrary to the overwhelming weight of the evidence.

The judgment of the circuit court should be reversed, and the cause remanded with directions to affirm the award of the Commission.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed, and the cause remanded with directions to affirm the award of the Commission.

All concur.