David MOROTZ, Appellant,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, Missouri Division of Employment Security and Monsanto Company, Respondents.**

No. 47665.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 10, 1984.

Frances Dianne Taylor, St. Louis, for appellant.

Larry R. Ruhmann, Jefferson City, for respondent, Mo. Div. of Employment Security.

Timothy P. Duggan, Jefferson City, for respondent Labor & Industrial Relations.

Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, for respondent Monsanto.

REINHARD, Judge.

Claimant appeals the decision of the Labor and Industrial Relations Commission disqualifying him from unemployment compensation benefits. The Commission determined that claimant's July 15, 1982 termination resulted from misconduct in connection with his employment, in that claimant deliberately violated the employer's rules concerning absences from work. Claimant failed to either call his supervisor or obtain advance approval for absences, as required by previously established procedures. As authorized by § 288.050.2, RSMo. Supp. 1982, the Commission disqualified claimant from eight weeks of benefits. The trial court affirmed this decision.

On review, we are bound to affirm the Commission's determination if authorized by law and supported by competent and substantial evidence. § 288.210, RSMo. 1978; *Husky Corporation v. Labor and Industrial Relations Commission*, 628 S.W.2d 378, 379 (Mo.App.1982). Moreover, we are bound by the findings of fact below if supported by the evidence and those findings are conclusive. *Mark Twain Manor Homes, Inc. v. Labor and Industrial Relations Commission*, 631 S.W.2d 72, 72 (Mo. App.1982). Applying these standards, we find the Commission's decision supported by substantial evidence and therefore affirm.

Claimant worked as a research technician at Monsanto Company for eighteen years. His last few years of employment were marked by chronic absenteeism, which prompted repeated counselling by company officials. Finally, in late April, 1981, claimant was hospitalized for three weeks of treatment for alcoholism.

By letter dated May 14, 1982, claimant's physician advised Monsanto of claimant's hospital release and recommended a schedule for his return to work. Claimant would remain home the week of May 17, 1982, and would work part-time the following week. He would then take a vacation and thereafter resume his regular duties on a full-time basis. Company officials accepted his physician's recommendations but advised claimant that absences after his scheduled vacation from June 28 to July 5 would have to be cleared directly with his immediate supervisor.[1] Moreover, in accordance with company rules, if claimant desired additional vacation time after July 5, a week's advance notice was required. Absences due to illness required a physician's excuse.

Contrary to the schedule, claimant did not report on July 6, 1982. In contravention of his orders to report directly to his supervisor, claimant instead called his secretary and indicated that he would take another day of vacation. He repeated this procedure on the following day. On July 8, claimant failed to contact anyone at the company, which prompted his supervisor to contact claimant's wife. She indicated that

1. Monsanto clearly set forth its position with respect to claimant's treatment and absenteeism in the confidential memorandum received by claimant:

This confirms our discussion today regarding unacceptable job performance.

Let's review the record. Attendance in the past few years has been marginal. During the second half of 1981 your attendance record was very poor resulting in approximately 20 days absence. This was called to your attention on several occasions and documented in your 1981 Performance Review, singling out unacceptable attendance, project delays and attention to all job assignments. In summary, the review stated that unless attendance improved immediately, overall performance would decrease to unsatisfactory. Attendance during the months of March, April and to date in May has been unacceptable. You have missed 41 working days during this year. Because of continued unacceptable attendance, with its inherent inability to perform your duties, the next absences not having the approval of your supervisor will result in prompt termination of your employment with Monsanto Company.

We have seen the proposed treatment plan of Dr. Burt Singerman as detailed in his May 14, 1982 letter to me. The plan has our agreement, within the conditions stated above in Paragraph 3.

In summary, the resolution of the performance problem rests entirely with you.

claimant was ill, and that his illness would prevent his return to work the following day as well. Thereafter, claimant was terminated effective July 15, 1982 for failure to follow company rules related to work absences in that claimant failed to notify his supervisor on July 6 and 7, failed to schedule vacation on these dates, and failed to report absences on July 8 and 9. Claimant was not fired for alcoholism.

At the hearing on this matter, claimant testified that he had an alcoholic blackout "almost the entire week" of July 5. He admitted calling his secretary and when asked how he could remember if, in fact, he blacked out during this time, he stated that his wife had reminded him. He submitted an unsworn statement from his wife to the effect that claimant was blacked out on July 8, 1982. He further testified that on July 10, 1982, he was readmitted to the hospital and on July 14, 1982 he entered a private treatment program.

On appeal, claimant contends that his conduct does not constitute misconduct. Although the term "misconduct" is not statutorily defined, the parameters of conduct deemed legally sufficient to warrant denial of unemployment benefits are well drawn. "[M]isconduct ... must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee...." *Laswell v. Industrial Commission of Missouri,* 534 S.W.2d 613, 616 (Mo.App.1976); *Ritch v. Industrial Commission,* 271 S.W.2d 791, 793 (Mo.App.1954).

Claimant does not dispute the existence of Monsanto's letter setting forth the procedure to be followed for reporting absences, and the ramifications of unexcused absences. His complaint is that the Commission could not under the circumstances find that his conduct falls under the scope of misconduct. Specifically, he suggests that he was in an alcoholic blackout on July 6, that his condition lasted the remainder of the week, and that his alcoholism is a "disease" which rendered him incapable of controlling his actions. Due to his alcoholic condition, he maintains that his violation of the reporting procedure was neither deliberate nor in willful disregard of Monsanto's orders, as is necessary to constitute misconduct.

Whether alcoholism is a "disease" and whether an alcoholic blackout destroys the volitional aspect of claimant's action need not be decided in this case. To reach these issues requires a threshold determination that claimant was, in fact, in an alcoholic stupor during the period in question. This was a question of fact for the Commission's determination. The Commission obviously disbelieved the claimant's testimony on this score and its determination in this matter is supported by substantial evidence. Indeed, claimant's own testimony at the hearing tends to refute the blackout defense. Claimant admitted that he remembered calling his secretary on two occasions to take additional vacation time, which he presumably would be unable to do if he was in an alcoholic stupor. An unsworn statement submitted by claimant's wife is equally unpersuasive; she could only state that the reason he did not call in July 8 was that he had blacked out. With this evidence before it, the Commission could reasonably discount claimant's statement that he only remembered calling his secretary because his wife told him. Likewise, the Commission was justified in concluding that claimant was well aware of his actions on July 6 and July 7, and equally aware of the ramifications of failing to follow the procedure for calling his supervisor directly and giving advance notice for additional vacation time.

As the Commission could reasonably conclude that claimant had control over his actions, his conduct constitutes misconduct in that it was a deliberate violation of the employer's rules. Thus, his conduct was legally sufficient to disqualify him from benefits.

Affirmed.

KAROHL, P.J., and CRANDALL, J., concur.