**Gail HURLBUT, Plaintiff–Appellant,**

v.

**LABOR AND INDUSTRIAL RELA-
TIONS COMMISSION, et al.,
Defendants–Respondents.**

No. 15599.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 2, 1988.

Robert P. Baker, Sarcoxie, for plaintiff-appellant.

Sharon A. Willis, Kansas City, Sandy Bowers, James Crenshaw, Jefferson City, for defendants-respondents.

MAUS, Judge.

The Appeals Tribunal found unemployment compensation claimant Gail Hurlbut had been, within the meaning of § 288.050.2, discharged for misconduct in that she failed to follow and enforce an accounting procedure prescribed by employer Rapid Robert's, Inc. The tribunal disqualified her for five weeks. With a dissenting opinion, the Labor and Industrial Relations Commission adopted the decision of the Appeals Tribunal. The plaintiff appeals the affirmance of that decision by the Circuit Court of Barry County. Her sole point on appeal is that the decision is not supported by competent and substantial evidence.

The following is a succinct outline of the evidence. At the outset, it is appropriate to state there was no evidence, or even an intimation, that claimant had misappropriated any funds. Before her discharge, claimant had been employed as manager of one of a chain of seven convenience stores for 11 months. The business included a laundromat. The employees of the store worked two shifts: 7:00 a.m. to 3:00 p.m. and 3:00 p.m. to 11:00 p.m. The store was funded with $1,000. Each of two cash registers was allotted $150. The balance of $700 was kept in a "change box" in a separate office in the laundromat. This division was made to minimize loss in the event of robbery. Bank deposits were made so that this funding was maintained. The funds and receipts and deposits were reconciled on a "Daily Sales Report."

In the summer of 1985 there was a shortage in the store's funds. As a result, the owner issued a written directive dated August 5, 1985. This directive apparently was a written implementation of an existing policy. The directive was headed "Beginning Cash/Cash on Hand." It set forth the above funding procedure with the following additional provision. "All employees are to verify that the beginning cash in the store is correct on each shift. A calculator tape is to be run on the change box and bad checks and this tape is to be dated and initialed and placed in the change box." It added, "Each shift is responsible for the entire 'beginning cash' amount as each shift has acess [sic] to the change box so this amount must be verified and corrected prior to making your shift's deposit." The purpose of the procedure was to provide, in the event of a cash shortage, a basis for determining during which shift the shortage occurred.

On March 20, 1985, the claimant attended an all day manager's meeting. On March 21, 1985, she did not verify the cash box until approximately 1:30 p.m. There was a shortage of $155.33. There was no initialed calculator tape in the cash box.

Claimant was not sure why there was no tape in the cash box. She had instructed the other employees in the procedure. She was in the store on March 20, 1985, before going to the meeting. She counted the money, but she said she had no time to

prepare the tape. She stopped at the store after the meeting, but did not verify the cash on hand. She told the supervisor of the stores that there were no tapes in the cash box for three or four days of that week. She testified there were no tapes in the cash box during the week she was terminated. Her written statement included the following.

Each employee is to verify the change fund prior to completing the shift's cash & sales report, and the employee is to leave a slip of paper with the total amount of fund, initial & date the paper and leave it where the change fund is kept. I did verify the change fund count every day—but I didn't always put the verification slip in with the account. I trained my employees to verify this fund at the end of each shift and I did the same thing. The piece of paper was not always put in there.

The findings of the Appeals Tribunal included the following.

It was the store manager's responsibility to require all employees to verify the transactions during each employees [sic] shift and to provide proof of such verification by attaching the adding machine tape to their report. It was the claimant's responsibility to confirm for herself each day that this process had been adhered to.

Its ultimate conclusion of law was the following. "It is found that the claimant failed to comply with the employer's reasonable rule and that her act was one of misconduct."

In her brief, claimant states it is her "position that this case hangs upon the meaning of *misconduct* in the context of the Missouri Employment Security Law, R.S.Mo. §§ 288.010 et seq. and in the light of its [undisputed] facts." (emphasis in original). Her basic argument is that there was only evidence of negligence and "a complete absence from the record of any suggestion of any wrongful intent, evil design, wantonness, deliberateness, callousness, or other indicia of 'misconduct' on the part of Gail Hurlbut."

The term "misconduct" as used in § 288.050.2 is not defined by statute. However, the courts of this state have uniformly adopted the definition summarized as follows.

[M]isconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

76 Am.Jur.2d Unemployment Compensation § 52, pp. 945–946 (1975). See *Storz Instrument v. Labor & Industrial Relations Commission,* 723 S.W.2d 72 (Mo. App.1986); *Continental Research v. Labor & Industrial Relations Commission of Missouri,* 708 S.W.2d 749 (Mo.App.1986); *Powell v. Division of Employment Security,* 669 S.W.2d 47 (Mo.App.1984); *Sain v. Labor and Industrial Relations Commission,* 564 S.W.2d 59 (Mo.App.1978); *Laswell v. Industrial Commission of Missouri,* 534 S.W.2d 613 (Mo.App.1976).

Review by this court to determine the sufficiency of the evidence to support a conclusion of "misconduct", as so defined, is governed by well-established limitations.

This court must consider the evidence in the light most favorable to the Commission's findings, together with all reasonable inferences which may be drawn therefrom, and we may not substitute our judgment for that of the Commission, or set aside the Commission's findings and order, unless they are clearly contrary to the overwhelming weight of the evidence.

*Powell,* at 50.

Contrary to claimant's contention, the evidence establishes more than the fact that she was inadvertently negligent on three

successive days in March of 1986. It is undisputed that she was aware of the required procedure. The importance of that procedure had been emphasized to her when she was given a copy of the written policy. She was aware of the purpose of that directive. In her written statement the claimant admitted that she and her subordinates did not always prepare the calculator tapes and place them in the change box. She referred to no specific period. Her statement supports an inference that she was aware of her failure to comply with the rule and her failure to enforce compliance by her subordinates. The claimant testified that no calculator tapes were placed in the change box the week that resulted in her discharge. Again, this testimony also supports a finding the claimant was aware the procedure was consistently not being followed. The statement and her testimony support the ultimate conclusion that she chose not to follow or to enforce the procedure prescribed by her employer.

The violation of a reasonable work rule can, within the above definition, constitute misconduct. See *Lundy's Market v. Florida Department of Commerce*, 373 So.2d 433 (Fla.App.1979); *Flesher v. Iowa Department of Job Service*, 372 N.W.2d 230 (Iowa 1985). "An employer has the right to expect that its procedures will be followed, especially in accounting for funds." *Vula v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review*, 64 Pa.Cmwlth. 439, 440 A.2d 685, 686 (1982). "The mishandling of funds has been held to be misconduct warranting the denial of unemployment benefits." *Terjesen v. State of Florida, Unemployment Appeals Commission*, 491 So.2d 1189, 1190 (Fla.App.1986). "Willful misconduct is established when action or inaction by the claimant amounts to conscious disregard of the interests of the employer or constitutes behavior contrary to that which an employer has a right to expect from an employee." *Gardner v. Commonwealth of Pennsylvania, Unemployment Compensation Board*, 71 Pa.Cmwlth. 512, 454 A.2d 1208, 1209 (1983).

There was sufficient evidence from which the Commission could find the claimant, by her action or inaction, deliberately disregarded a reasonable rule of her employer. The judgment is affirmed.

FLANIGAN, P.J. and HOGAN, J., concur.

PREWITT, J., dissents.