**CIRCUIT COURT OF JACKSON COUNTY, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, and Wendell Whittaker, Respondents.**

**No. WD 52648.**

Missouri Court of Appeals, Western District.

Jan. 14, 1997.

Jane Rosenthal, Kansas City, for appellant.

Wendell Whittaker, Aurora, CO, Sharon Willis, Kansas City, for respondents.

SPINDEN, Judge.

The circuit court of Jackson County fired one of its employees, Wendell Whittaker, for using a firearm to threaten a woman and for misusing his court identification card. Whittaker filed a claim for unemployment compensation. The Labor and Industrial Relations Commission ruled that Whittaker's firing had not resulted from misconduct "connected with his work," so he still was eligible for unemployment benefits. The circuit court appeals. We reverse.

The circuit court's family division employed Whittaker for more than five months as a youth worker at a school for juvenile boys. He simultaneously operated a private business as an independent process server. The court's dissatisfaction with Whittaker emerged from his dealings with Patricia Coonfield as part of the process server business he operated during his off-duty hours. The circuit court became aware of the problem when Coonfield told the court that Whittaker was harassing her and asked the court to issue an order prohibiting Whittaker's harassment.

At an August 10, 1995, hearing, Coonfield told the circuit court that after she hired Whittaker to serve a pleading for her, he began harassing her:

> He came out to my home and I paid him. Once he'd said that he'd received the money and it was on the 21st; then he came back on the 22nd, and said he wanted his money. He took his gun, or he took and put his hand on his gun and told me that he wanted his money or else, and that he would not serve my papers on my party. I ask [sic] him to show some identification in [sic] his badge. He refused to do that Sir, so then I game him the cashiers check. I have a copy of that Your Honor.
>
> . . . .
>
> He tore my screen door, and tore my property. . . .
>
> . . . .
>
> And he does carry a gun, and he has been driving around several times. He is not here. And I wouldn't come out of my house, because of the fact that he was carrying a gun, and he had threatened me with the gun, and he tore my screen door open trying to get in, and my dogs barked and went after the door.
>
> . . . .
>
> He's come to my house several different times. He hasn't come up on the porch, but he's come by driving in his car, and taking his gun out and pointing it toward the house. When I called the police, by

the time the police get there he's done gone.

....

Yeow, he tells me that he's going to get me, and he's going to blow my head off.

The circuit court responded by issuing a Full Order of Protection which ordered Whittaker "not to abuse, threaten to abuse, molest, stalk or disturb the peace of [Coonfield] *wherever [she] may be* [.] The Court also orders ... **THAT WENDELL C. WHIT-AKER** [sic] **IS PROHIBITED FROM SERVING SUMMONS ON ANY CASE IN DIVISION 107 UNTIL FURTHER ORDER OF THE COURT."** [1]

The day after the hearing, Whittaker met with David Durbin, the circuit court's assistant court administrator and legal counsel, to protest his not being able to serve summonses. Durbin told him that he could not overturn the protection order and advised Whittaker to seek private counsel. The next day, Durbin told David Kierst, director of services and juvenile officer for the family court division, of the protection order and gave him a copy.

The circuit court fired Whittaker a few days later. A letter dated August 14, 1995, to Whittaker, signed by Kierst and Michael Barnett, assistant director of operations for the family court, said:

After reviewing the information available to the Family Court, it has been determined that your behavior in the community is not in keeping with the standards that are desired and found acceptable for Court employees. Your intimidation toward a citizen, including using a weapon (handgun) to demand payment for services you allegedly rendered, is totally unacceptable behavior from a court employee either on or off the job. Your use of your Family Court identification card in connection with your "bounty hunter" badge is inappropriate and reflects adversely on the Family Court.

Based on your violation of Administrative Rule # 7, major violation # 14: "Behavior that adversely affects the Court or the employee's ability to perform assigned duties (Supreme Court Administrative Rule 7)", and major violation # 17, "Using work time or equipment for personal or unauthorized use", we are terminating your employment with the Family Court.

Because Whittaker was still a probationary employee, he had no right to appeal the termination.

He filed a claim for unemployment benefits with the Missouri Division of Employment Security. On September 18, 1995, S.M. Smith, a division deputy, decided that Whittaker was not qualified for unemployment benefits because he had been discharged for misconduct connected with work. Smith explained, "[Whittaker] was discharged because he used both aggressive and disruptive behavior while attempting to collect fees for the processing of papers. In addition he used his county identification in his attempt to show he was an officer of the court when in fact he was not working, at the time, for the court but as a private citizen."

Whittaker appealed the determination. J.W. Allen, an appeals referee, convened a hearing by telephone conference on November 20, 1995. Allen reversed Smith's decision:

The evidence shows that [Whittaker] was discharged ... because the [circuit court] believed that [Whittaker] conducted himself improperly while running his own business. [Whittaker's] action in conducting his own business is not misconduct unless the [circuit court] shows that the action constituted misconduct connected with work. The only evidence to connect any action with [Whittaker's] work was the allegation that [Whittaker] misused his ID. An assumption on behalf of [Durbin] does not constitute misconduct associated with [Whittaker's] actions.

The circuit court appealed to the commission on the ground that Allen's decision "fails to reach the main issues of the case." On March 25, 1996, the commission, in a 2–1 vote, adopted Allen's decision as its decision.

1. The emphasis was in the original.

 Our review of the commission's decision is governed by § 288.210 [2] which says, "In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." We view the evidence in the light most favorable to the commission's findings and all reasonable inferences which support its decision. *Stanton v. Missouri Division of Employment Security,* 799 S.W.2d 202, 203 (Mo. App.1990). We do not substitute our judgment for the commission's, and we set aside the commission's decision only if it is clearly contrary to the overwhelming weight of the evidence. *Ritch v. Industrial Commission of Missouri,* 271 S.W.2d 791, 793 (Mo.App. 1954).

 The issue we must resolve is whether the commission erred in determining that Whittaker's actions did not constitute "misconduct connected with work" within the meaning of the employment security laws. Under § 288.050.2, an employee who has been discharged for misconduct connected with his work can be disqualified from receiving unemployment benefits for up to 16 weeks. The statute does not define "misconduct," so the courts have defined it:

> Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has the right to expect of his employee,* or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Ritch,* 271 S.W.2d at 793 (emphasis added).

Whittaker's actions towards Coonfield fell well within the definition of "misconduct" set out in *Ritch.* The circuit court was correct when it complained to the commission that

Allen's decision did not "reach the main issues of the case." By focusing only on Whittaker's use of his circuit court identification card, Allen completely missed a significant portion of the *Ritch* definition: "a disregard of standards of behavior which the employer has the right to expect of his employee."

A court need not tolerate its employees' violent and disruptive behavior—even when it occurs during off-duty hours. As an integral arm of law enforcement, the circuit court must be diligent in protecting its reputation. Surely, the circuit court had a reasonable expectation that Whittaker would refrain from ripping Coonfield's screen door and using a gun to collect a debt from her. The commission's conclusion that Whittaker's actions reported by Coonfield had nothing to do with his job was wrong. Whittaker disregarded standards of behavior which the circuit court had a right to expect of its juvenile workers; therefore, his conduct rendered him ineligible for unemployment benefits.

That misconduct occurs during an employee's off-duty hours is a tempting "bright line" for deciding these cases. Such bright lines frequently will lead to the correct result, but in other cases, such as this one, it fails. Even when bright lines lead to correct results they should never be a substitute for sound judgment.

We, therefore, reverse the commission's decision and remand the case with instructions that the commission deny Whittaker's request for unemployment compensation.

BRECKENRIDGE, P.J., and LAURA DENVIR STITH, J., concur.

2. All statutory citations refer to the Missouri Revised Statutes 1994.