**KORET OF CALIFORNIA, INC.**
**Employer–Appellant,**

v.

**Kathy ZIMMERMAN, Claimant–**
**Respondent,**

and

**Division of Employment Security,**
**Respondent.**

No. 20983.

Missouri Court of Appeals,
Southern District,
Division One.

April 9, 1997.

Frank M. Evans, III, Daniel R. Wichmer, Miller & Sanford, P.C., Springfield, for appellant.

No appearance for respondent.

BARNEY, Presiding Judge.

Appellant Koret of California, Inc., (Koret) appeals from the decision of the Labor and Industrial Relations Commission (Commission) affirming a determination by the Appeals Tribunal of the Division of Employment Security that Claimant Kathy Zimmerman (Claimant) was eligible for unemployment compensation benefits under the

provisions of the Missouri Employment Security Law, §§ 288.010—288.500.[1]

The evidence reveals that Koret operates a chain of several ladies apparel factory outlet stores, including a high volume store at Branson, Missouri, where Claimant worked as store manager supervising nine employees. Claimant worked from November 7, 1994, through October 24, 1995. During this period of time, Koret discovered that on approximately six different occasions there were discrepancies between amounts stated on nightly deposit slips and the amount of money actually deposited in the total amount of $5,028.59. Claimant testified that she was aware of Koret's policies regarding the handling of nightly deposits and the necessity of obtaining dual signatures on deposit slips and having a second person reconcile the deposit figures. However, Claimant stated that the press of business made compliance difficult with these and other company procedures and she had to rely on other employees to make nightly deposits.

Unrefuted evidence further revealed that Claimant admitted her manager's office was improperly secured because it could not be locked and faulted building maintenance for this discrepancy. However, in late October 1995, a Koret representative was able to correct the problem with one phone call to the building maintenance office. Additionally, the unrefuted evidence presented by Koret showed that at the time of Claimant's discharge, office records at the store were in a state of disarray, paperwork was missing, hundreds of clothing articles on the store floor were incorrectly priced, and upon an inventory made on December 3, 1995, after Claimant's departure, it was determined that there were shortages of over 4,000 garments.

A deputy of the Division of Employment Security found that Claimant was disqualified for unemployment compensation benefits for ten weeks, on a finding that Claimant was discharged November 1, 1995, for misconduct connected with her work. An Appeals Tribunal reversed the deputy's determination and the Commission adopted the decision of the Appeals Tribunal.

The Appeals Tribunal found that Claimant "worked long hours and *did not conform to policies in various ways including cash management practices* because time would not permit such conformance." (Italics added). It then concluded that Claimant, as "manager, was assigned a greater volume of work than was reasonably possible for her to perform in compliance with the employer's policies ... [and she made a] good faith effort to perform her managerial duties...." Since there was "no direct evidence that the [C]laimant took employer funds or converted employer funds to her own use," it concluded that Claimant "was discharged on November 1, 1995, but not for misconduct connected with her work."

In its sole point on appeal, Koret argues that the Commission erred as a matter of law in concluding that the actions of Claimant did not amount to misconduct connected with her work. Koret contends that the uncontradicted evidence discloses that Claimant had failed to comply with mandated policies and procedures in the conduct of her duties, including improper accounting and cash management procedures, improper procedure for handling nightly deposits, improper store security procedures, improper product pricing procedures, and incorrect and improper displaying of products. Koret contends that the evidence showed Claimant's work performance was so negligent and recurrent as to manifest culpability amounting to misconduct connected with her employment.[2]

 Review is under § 288.210, RSMo Supp.1995. The issue is whether the Commission's finding that Claimant was not engaged in acts of misconduct in connection with her work is supported by competent and

1. Statutory references are to RSMo 1994, unless otherwise noted.

2. Claimant filed no brief. While there is no penalty for failure to file a brief, we are required to decide the case without the benefit of Claimant's authorities and points of view. *Fitzgerald v. Director of Revenue*, 922 S.W.2d 478, 479 n. 3 (Mo.App.1996).

888 ■

substantial evidence. *Bartsch v. Moore*, 931 S.W.2d 877, 878 (Mo.App.1996). In the absence of fraud and when supported by competent and substantial evidence, the Commission's findings shall be conclusive and we confine our judicial review to questions of law. *Heavy Duty Trux Ltd., v. Labor and Indus. Relations Comm'n,* 880 S.W.2d 637, 640 (Mo.App.1994).

The term "misconduct" as used in § 288.050.2 is not defined by statute. Adopting the definition of "misconduct" as set out in 76 Am.Jur.2d *Unemployment Compensation* § 52 (1975)[3], the courts of this state have adopted the definition summarized as follows:

> [M]isconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Hurlbut v. Labor and Indus. Relations Comm'n,* 761 S.W.2d 282, 284 (Mo.App.1988).

In *Hurlbut,* this Court upheld an Appeals Tribunal's determination that a manager of a convenience store failed to follow and enforce proper accounting procedure prescribed by the employer relating to the verification of the beginning cash on hand for each shift, and found such conduct to constitute "misconduct" as that term is used in § 288.050.2. The company policy provided that a "calculator tape ... be run on the change box and bad checks and [the] tape [was] to be dated and initialed and placed in the change box." *Hurlbut,* 761 S.W.2d at 283. The purpose of the procedure was to provide a means of determining which shift was responsible for

shortages that had arisen periodically. Although the *Hurlbut* claimant had instructed other employees regarding this procedure, it was not followed, and on an occasion that the claimant manager had attended an all day manager's meeting, a shortage of $155.33 arose. No initialed calculator tape was found in the cash box. Claimant asserted that lack of time had prevented her from preparing the tape after she had counted the money. Additionally, claimant testified that there were no tapes in the cash box during the week she was terminated and admitted that she and her subordinates did not always prepare the calculator tapes and place them in the cash box. Nevertheless, claimant asserted that, at most, there was only evidence of negligence and " 'a complete absence from the record of any suggestion of any wrongful intent, evil design, wantonness, deliberateness ... or other indicia of "misconduct." ' " *Id.* at 284. This Court concluded, however, that " '[a]n employer has the right to expect that its procedures will be followed, especially in accounting for funds.' " *Id.* at 285. "[S]he chose not to follow or to enforce the procedure prescribed by her employer." *Id.* The "violation of a reasonable work rule can, within the above definition, constitute misconduct." *Id.* Further, the "mishandling of funds has been held to be misconduct warranting the denial of unemployment benefits." *Hurlbut,* 761 S.W.2d at 285.

In the instant case, Claimant admitted that she was aware of Koret's policies regarding the handling of nightly deposits. Indeed, the Commission found that Claimant "did not conform to policies in various ways including cash management practices...." Although Claimant asserted that the press of time prevented her from engaging in proper accounting and banking practices, the evidence shows that deposits were made nightly, after the store had closed, when there would be little press of activities associated with the day-time operation of the store. Although Claimant felt that she had to rely on subordinates to make the deposit, she, as manager, was ultimately responsible for the implementation of the company rules and procedures

3. This section has been renumbered. The definition of "misconduct" is now contained in 76

Am.Jur.2d *Unemployment Compensation* § 77 (1992).

which mandated dual signatures on deposit slips, as well as the necessity of a second person reconciling the deposit figures. This was not always done and Claimant by her actions and inactions deliberately disregarded the reasonable rules of her employer. *Id.*

Additionally, the failure to properly secure the manager's office was unaffected by the press of business. All Claimant had to do was to pick up the phone and contact building maintenance, a task which was readily performed by one of Koret's representatives when he arrived on the scene. Undisputed evidence also revealed that clothing on the store floor was incorrectly priced and a subsequent audit revealed missing garments. Together, these acts of conduct, adverse to Claimant's employer's interests, resulted in detriment to her employer, justifying a finding of misconduct. *See Powell v. Division of Employment Sec.*, 669 S.W.2d 47, 51 (Mo. App.1984).

We conclude that the Commission erred in awarding unemployment benefits. § 288.210, RSMo Supp.1995. The Commission's order affirming and adopting the Appeals Tribunal's decision is reversed. The cause is remanded to the Commission to enter an order disqualifying Claimant from November 1, 1995, for a period of ten weeks, because of her discharge by Claimant's employer for misconduct connected with her work.

GARRISON and PREWITT, JJ., concur.