FIVE STAR MANUFACTURING, INC., Employer–Appellant,

v.

David TANKSLEY, Claimant–Respondent,

and

Division of Employment Security, Respondent.

No. 26590.

Missouri Court of Appeals, Southern District, Division One.

July 13, 2005.

Motion for Rehearing or Transfer Denied July 26, 2005.

Application for Transfer Denied Aug. 30, 2005.

---

Phillip R. Garrison, P.J., filed a dissenting opinion.

Aaron D. Jones, Donald W. Jones, Ernesto C. Gapasin, Springfield, MO, for appellant.

Larry R. Ruhmann, St. Louis, MO, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Five Star Manufacturing, Inc. ("Appellant") appeals from the Labor & Industrial Relations Commission's finding that David Tanksley ("Claimant") was not discharged from his job for misconduct, and therefore

was entitled to unemployment benefits without penalty. We affirm.

■■■ The standard of review in unemployment compensation cases is determined by section 288.210.[1] It states, in pertinent part,

> Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) The commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

We give deference to the Commission's findings of fact and its determinations of witness credibility. *CNW Foods, Inc. v. Davidson,* 141 S.W.3d 100, 102 (Mo.App. S.D.2004). We will consider the whole record when deciding whether the Commission's decision is supported by competent and substantial evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–223 (Mo. banc 2003). "In determining whether the decision is authorized by law, we are not bound by the Commission's conclusions of law or its application of law to facts. We review questions of law independently without any deference to the Commission's findings." *Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 165–66 (Mo.App. S.D.2004) (citations omitted).

Whether or not the Commission's findings support the determination of misconduct connected with work is a question of law. *Rapid Roberts, Inc. v. Potter,* 125 S.W.3d 395, 397 (Mo.App. S.D.2004).

The Commission found in pertinent part:

FINDINGS OF FACT:

The claimant worked for the employer for about twelve years as a welder. He last worked for the employer on February 11, 2004.

On February 11, 2004, the claimant was discharged because the employer was dissatisfied with his behavior at work. The employer eventually offered the claimant his job back, and the claimant returned to work for the employer on April 5, 2004.

On February 11, 2004, an election was held in which a collective bargaining unit was approved by the employer's employees. Although the employer's president had decided to discharge the claimant prior to the election, he waited until the election was over. He then told the claimant he was discharged, but did not give him a reason for the discharge. The claimant testified he had never received any warnings.

The "last straw" occurred on February 11, 2004, when the claimant went to the secretary's desk to get his check. The secretary was on the phone, so the claimant had to wait a short time. The secretary credibly testified that claimant seemed impatient while she was on the phone and, after he received his check, made some rude comments about being cheated on his pay, stamped his feet, and slammed the door when he was leaving. After the election was over on February 11, 2004, the claimant was discharged because of his behavior. Ac-

---

1. All statutory references are to RSMo (2000) unless otherwise specified.

cording to the employer, the claimant had engaged in similar behavior for several months.

CONCLUSIONS OF LAW:

"Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Ritch v. Industrial Commission*, 271 S.W.2d 791, 793 (Mo.App. 1954).

The claimant was discharged on February 11, 2004, because of his behavior. The "last straw" occurred on February 11, 2004. The claimant had never received any warnings about his behavior. Although the claimant's behavior on that date may have been rude, it does not rise to the level of misconduct connected with work, as defined in *Ritch*. If the claimant's on-going behavior was so inappropriate or offensive, the employer could have warned him about his behavior thereby affording the claimant an opportunity to correct the problem. Additionally, the claimant had apparently engaged in similar behavior for several months before he was discharged. While this does not excuse his behavior, he had not been warned that his behavior was unacceptable. The employer bears the burden of presenting evidence sufficient to establish misconduct con-

nected with work. The employer has failed to meet this burden. It is concluded that the claimant was discharged on February 11, 2004, but not for misconduct connected with work.

 Appellant presents one point on appeal. It contends that the Commission's determination that Claimant was not disqualified from receiving benefits is erroneous and not supported by competent and substantial evidence. It argues that the evidence, taken as a whole, shows that Claimant engaged in "willful and deliberate defiance of [Appellant's] policies and instructions and was guilty of misconduct."

Claimant was discharged by Appellant on February 11, 2004, after an incident involving Nicole Newberry ("Newberry"), a secretary employed by Appellant. Claimant had worked for Appellant, a manufacturing company, for about twelve years before his discharge, was rehired by Appellant on April 5, 2005, and was still employed by Appellant on the date of the hearing for this claim.

Newberry testified that on February 11, 2004, she was on the phone with a customer when Claimant entered her office. Before she could conclude that conversation, she said that she "could hear him over the customer. He was sitting there breathing heavily up front and getting antsy with me because I wasn't helping him." As she was hanging up the phone, another employee walked into the office. Both requested their checks. After she gave them their checks, she said, "they was [sic] making comments about being ripped off and cheated, was [sic] laughing obnoxiously, walked out the door in the hallway there, stomped—one of them stomped their foot and they both started laughing, went out the front door, slammed it and it upset me."[2] Newberry began to cry fol-

---

**2.** Claimant testified that he went to the office to get his check when he got off work that

lowing this incident, and stated that "everything had piled up together for months" and that Claimant glared at her and was just hateful when he would see her in the hall. Newberry then informed her parents, who owned part of and worked at the company, about what happened. Claimant was discharged later that day.

Nancy Woodward ("Woodward"), Appellant's office manager, testified on behalf of Appellant, giving additional reasons for Claimant's termination. She stated that he failed to keep his work area clean, and when told to do so, he did it in a defiant manner. She also testified that Appellant had a posted policy stating that if an employee was going to be absent, they were to call ahead of time, otherwise the absence was unexcused. Despite that policy, Claimant was absent on Saturday, January 3, 2004, without calling in, even though it was posted in the building as a scheduled workday. She stated that Appellant did not terminate Claimant following this absence because they thought they would give him another chance and because of a pending election to determine whether Appellant would be unionized. They consulted an attorney who told them it would be unwise to terminate him before the election because it might look like they were firing him for union activity.

Woodward also testified that Claimant left work on January 12, 2004, after working only one and one-half hours, without informing Appellant as to why he was leaving. Later that same week, Claimant arrived at work on time but there was no product for him to work on. One of the owners told him that there would be product in five or ten minutes, but Claimant left without waiting.

Woodward also discussed Claimant's attitude at work, describing how he would walk down the hall and act as though he would walk into someone walking in the other direction, if that other person did not move. She stated, "I mean he walks straight towards us with a glare on his face like he's trying to antagonize us to fire him or something. I don't know what his reasoning is." The evidence was that although this behavior took place prior to his discharge, Claimant was never warned about it.

Claimant testified that he received no warnings regarding his behavior while he was employed by Appellant, and that he never got along with Jim Woodward, one of the owners. He understood that he was to be at work when scheduled, work efficiently, and keep his work area clean and tidy. He knew that he was scheduled to work on January 3, 2004, but he stayed home without calling in because he believed that he had already worked forty hours that week. The records showed, however, that he only worked thirty-two hours that week. Claimant admitted that he knew staying home was wrong and that he could be discharged for misconduct. He also stated that on January 12, 2004, he left work after one and one-half hours because he was sick, and that he told a supervisor that he was leaving. As to the incident on January 15, 2004, he stated that there were no parts available for him to work on when he arrived. He stated that as he arrived at 5:30 a.m., and the workers who would supply him with parts did not arrive until 7:00 a.m., he would have to wait one and one-half hours before he could do anything. He said that, as far as he knew, if someone came to work and there was nothing to work on, that person would not stick around. However, he said that no one told him whether parts were going to be available for him to work on soon or not, and he did not ask anyone

day. He said that his check did not look right, and that it was in fact incorrect.

before leaving. As regards keeping his work area clean, Claimant admitted that it was important to keep it clean and that it was part of his job, and that when told to clean up by an owner, he did it reluctantly.

■ It is the employer's burden to show that an employee was discharged for misconduct connected with work. *Rapid Roberts, Inc.* at 397. Although there was evidence which would have supported a determination that Claimant was terminated for misconduct connected with his work, the Commission was free to reject the Appellant's contentions, given the facts that this was a twelve-year employee who was given no warnings about his alleged prior "misconduct," a union election was taking place, and Newberry's statements lacked particularity of the alleged misconduct of Claimant on February 11, 2004. As noted under our standard of review, the findings of the Commission, if supported by competent and substantial evidence, shall be conclusive and we are confined to questions of law. The Commission properly considered the totality of Claimant's prior conduct. We, therefore, affirm the Commission's findings.

PREWITT, J., concurs.

GARRISON, P.J., dissents in separate opinion.

PHILLIP R. GARRISON, Presiding Judge, dissenting.

I respectfully dissent. I believe that the opinion of the appeals tribunal, adopted by the Commission, indicates that it held as it did because of the failure of Appellant to first warn Claimant that his behavior was unacceptable, and not because his conduct failed to qualify as misconduct connected with work. Its conclusions of law include the following: "[Claimant] had never received any warnings about his behavior"; "[i]f [Claimant's] on-going behavior was so

inappropriate or offensive, the employer could have warned him about his behavior thereby affording [Claimant] an opportunity to correct the problem"; and it recited that Claimant had engaged in similar behavior for several months before being discharged, noting that "while this does not excuse his behavior, he had not been warned that his behavior was unacceptable."

An employee may be disqualified from receiving unemployment benefits if that employee was discharged for "misconduct connected with the claimant's work." Section 288.050.2. The statute does not define "misconduct connected with work," but, as acknowledged by the Commission, the courts have defined it as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Ritch v. Industrial Comm'n,* 271 S.W.2d 791, 793 (Mo.App.1954); *see also City of Branson v. Santo,* 111 S.W.3d 910, 913 (Mo.App. S.D.2003).

Under that definition, this court has held that misconduct is established when action or inaction by the claimant amounts to a conscious disregard of the interests of the employer or constitutes behavior contrary to that which an employer has a right to expect from an employee. *Hurlbut v. Labor & Indus. Rel. Comm'n,* 761 S.W.2d 282, 285 (Mo.App. S.D.1988). In *Hurlbut,* the claimant failed to follow the employer's communicated policy regarding accounting procedures of cash receipts.

*Id.* at 284–85. In affirming claimant's five-week disqualification from receiving unemployment benefits, we held that a violation of a reasonable work rule can constitute misconduct. *Id.* at 285.

In the instant case, Claimant admitted violating the known policy regarding absences from work without calling in. In fact, he admitted that to do so was wrong and that he could be discharged for misconduct.[1] He also admitted to "reluctantly" cleaning his work area when told to do so by the owner of the company, although he acknowledged that it was an important part of his job. These incidents, together with the other testimony about his defiant attitude would not only qualify as violations of reasonable work rules, but also as a conscious disregard of the interests of the employer as well as behavior contrary to that which the employer has a right to expect from an employee.

I believe that it is significant that the accepted definition of misconduct connected with work does not condition application of the disqualification under Section 288.050.2 on the existence of a prior warning. I have not been directed to, nor have I found, authority in Missouri holding that a prior warning is necessary before an employee discharged for what would otherwise be misconduct connected with work is disqualified from unemployment benefits. At least one other state expressly recognizes that a prior warning is not necessary. *See Peluso v. Commonwealth of Pa.,—Unemployment Comp. Bd. of Review,* 12 Pa.Cmwlth. 250, 315 A.2d 340, 342 (1974).

Appellant cites a line of cases from Michigan describing a "last straw" doctrine, which hold, basically, that an employee can be discharged for misconduct on the basis of a series of events, which when considered together, "evince a wilful disregard of the employer's interests." *Christophersen v. City of Menominee,* 137 Mich.App. 776, 359 N.W.2d 563, 566 (1984); *see also Giddens v. Employment Sec. Comm'n,* 4 Mich.App. 526, 145 N.W.2d 294, 298 (1966). Neither case has been cited in Missouri, nor are we able to find that the Missouri courts have expressly adopted a similar doctrine.[2] However, it seems reasonable to me, given the accepted definition of misconduct under Section 288.050.2, that prior conduct by an employee could be considered in determining whether his discharge was for misconduct connected with work.

I would conclude in this case that Claimant's prior behavior constituted misconduct connected with his work under Section 288.050.2. As indicated, however, it appears to me that the Commission held as it did because of the failure to warn him that his conduct could result in a discharge. As such, I believe that was a misstatement

---

1. This testimony actually could be considered as acknowledging a warning concerning the failure to comply with attendance rules.

2. Section 288.050.3 RSMo (Cum.Supp.2004), states,

 Absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone constitutes misconduct. In determining whether the degree of absenteeism or tardiness constitutes a pattern for which misconduct may be found, the division shall consider whether the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based. This subsection appears to allow for consideration of a pattern of conduct in the determination of whether misconduct occurred, at least as regards absenteeism. Furthermore, this court appears to have considered multiple acts over a period of time in finding that an employee engaged in misconduct. *See Koret of California, Inc. v. Zimmerman,* 941 S.W.2d 886, 889 (Mo.App. S.D.1997).

and misapplication of the law requiring a reversal and remand for further proceedings.