Kevin GAYLORD, Respondent,

v.

WAL–MART ASSOCIATES, INC., Defendant,

and

Division of Employment Security, Appellant.

No. WD 65939.

Missouri Court of Appeals, Western District.

June 20, 2006.

Larry R. Ruhmann, Jefferson City, for appellant.

Kevin Gaylord, Chilhowee, pro se.

PAUL M. SPINDEN, Judge.

The Division of Employment Security appeals the Labor and Industrial Relations Commission's decision that Kevin Gaylord is entitled to unemployment compensation because he was not discharged for misconduct connected with his work at Wal–Mart Associates, Inc. The division contends that

the commission erred in finding that Gaylord did not commit misconduct connected with his work because Gaylord admitted that he was at work with a detectable amount of a controlled substance in his bodily system in violation of Wal–Mart's alcohol and drug policy. In the alternative, the division asserts that Gaylord was guilty of misconduct connected with work under § 288.050.2, RSMo Supp.2005. We affirm the commission's decision.

Gaylord worked for Wal–Mart as an automotive technician from December 9, 2003, until Wal–Mart fired him on January 18, 2005. The day before he was fired, he cut his finger while working in the automotive shop. His supervisor, Kevin Byers, asked him whether or not he needed to see a doctor. Gaylord told Byers that he did not think that he did but, in any case, he did not want to go to the doctor because he had smoked marijuana a few weeks before the accident and could not pass a drug test. Gaylord testified that Byers told him that he either had to go see a doctor or go home but, if he went home, he would need to take a drug test the next day when he came back to work. Gaylord chose to go home.

Gaylord returned to work the next day, and Wal–Mart's manager, Mark Thomason, told Gaylord that, because he admitted to smoking marijuana and because he had refused to take a drug test after his accident, he was being discharged for gross misconduct. According to Thomason, Wal–Mart's policy required its employees to submit to a drug test within 24 hours of any accident. Thomason said that Wal–Mart also had a policy of terminating employment of any employee who refused to submit to a request for a drug or alcohol test.[1]

Gaylord insisted that he did not refuse to submit to a drug test. He said that he thought that when he arrived at work the day after the accident he was going to have a drug test.

Gaylord submitted an application for unemployment benefits with the Division of Employment Security. One of the division's deputies concluded that Gaylord was not qualified to receive unemployment benefits because he had been discharged for misconduct connected to work. Gaylord appealed this decision to the division's appeals tribunal, which found that Gaylord was not discharged from his job for misconduct connected with his work and concluded that he was qualified to receive unemployment compensation benefits. The division appealed this decision to the commission, which affirmed the appeals tribunal's decision.

In appealing the commission's decision, the division contends that the commission erred in finding that Gaylord did not commit misconduct connected with his work because the requirements of § 288.045, RSMo Supp.2005, were satisfied. Gaylord admitted that he was at work with a detectable amount of a controlled substance in his bodily system. Section 288.045.1 says:

If a claimant is at work with a detectible [sic] amount of alcohol or a controlled substance as defined in section 195.010, RSMo, in the claimant's system, *in violation of the employer's alcohol and controlled substance workplace policy,* the claimant shall have committed misconduct connected with the claimant's work.[2]

The division asserts that, because Gaylord admitted that he had used marijuana and

---

1. Wal–Mart did not provide a copy of its drug policy at the hearing.

2. We added the emphasis.

would fail a drug test, he, in effect, stipulated that he had a detectable amount of a controlled substance in his system in violation of § 288.045.1.

Having a detectable amount of a controlled substance in one's bodily system, however, is not the only requirement of § 288.045. Not only does subsection 1 of § 288.045 require that the employee's conduct violate the employer's workplace policy, but subsection 4 of the statute adds:

> *For this section to be applicable,* the claimant must have previously been notified of the employer's alcohol and controlled substance workplace policy by conspicuously posting the policy in the workplace, by including the policy in a written personnel policy or handbook, or by statement of such policy in a collective bargaining agreement governing employment of the employee. The policy must state that a positive test result shall be deemed misconduct and may result in suspension or termination of employment.[3]

At the hearing, Wal–Mart's manager testified that Wal–Mart had a drug policy of terminating any employee who refused to submit to a request for a drug or alcohol test, but he did not say that, under Wal–Mart's policy, a positive drug test would be deemed misconduct and subject the employee to suspension or termination as required by § 288.045.4. Nor did anyone provide evidence that Wal–Mart provided Gaylord with notice of its drug policy "by conspicuously posting the policy in the workplace, by including the policy in a written personnel policy or handbook, or by statement of such policy in a collective bargaining agreement governing employment of the employee," as required by § 288.045. Wal–Mart did not even present a written copy of its policy at the hearing.

■ Section 288.045.11 specifically says that § 288.045 will "have no effect on employers who do not avail themselves of the requirements and regulations for alcohol and controlled drug testing determinations that are required to affirm misconduct connected with work findings." Wal–Mart bore the burden of showing that it discharged Gaylord for misconduct connected with work. *Hoover v. Community Blood Center,* 153 S.W.3d 9, 13 (Mo.App. 2005). Thus, for Wal–Mart to take advantage of § 288.045, it had to show that it met all the requirements. This it did not do.

■ In the alternative, the division asserts that, even if the requirements of § 288.045 were not satisfied, Gaylord was guilty of misconduct connected with work under § 288.050.2, which says:

> If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state or any other state as prescribed in this section.

Section 288.030.1(24), RSMo Supp.2005, defines "misconduct" as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or

---

**3.** We added the emphasis.

of the employee's duties and obligations to the employer[.]

The division asserts that Gaylord's avoidance of taking a drug test on the day of the accident was a disregard of the employer's legitimate interests of workplace safety and amounted to misconduct. It also contends that an employee's knowing violation of his or her employer's reasonable rule is misconduct connected with work. *See Hurlbut v. Labor and Industrial Relations Commission*, 761 S.W.2d 282, 285 (Mo.App.1988).

Although Wal–Mart did not submit a copy of it drug policy as an exhibit at the hearing, Thomason said that Wal–Mart's policy required employees to submit to a drug test within 24 hours of an accident and that it would terminate any employee who refused to submit to a request for a drug or alcohol test. The evidence, viewed in the light most favorable to the commission's decision, established that Gaylord did not refuse to submit to a drug test. After the accident, Gaylord's supervisor gave him the option of consulting a doctor or going home but informed him that, if he went home, he would need to take a drug test the next day when he returned to work. Gaylord went home but returned to work the next day expecting to take a drug test. He, therefore, was willing to take a drug test within 24 hours of the accident, but Wal–Mart discharged him without asking him to take a drug test. Thus, Gaylord did not violate Wal–Mart's policy as described by Thomason, and Gaylord's conduct did not constitute misconduct connected with his work.

To the extent that Wal–Mart asserts that Gaylord's admission that he used marijuana a few weeks before the accident was a violation of Wal–Mart's drug policy and was, therefore, misconduct connected with work, we are not persuaded. Again, Wal–Mart did not provide a copy of its drug policy at the hearing, and we do not find evidence that Gaylord violated Wal–Mart's policy as Thomason described it. Although the division asserts that Gaylord testified that Wal–Mart had a policy prohibiting drug use and that he was aware of this policy, we find no such testimony in the record.[4]

We, therefore, affirm the commission's decision. Because Wal–Mart did not meet its burden of proving that it discharged Gaylord for misconduct connected with his work, we affirm the commission's decision that Gaylord is qualified to receive unemployment compensation.

THOMAS H. NEWTON, Presiding Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.

---

4. Because we conclude that Wal–Mart did not establish that Gaylord was guilty of misconduct connected with work under Section 288.050.2, we need not address the division's remaining contention that, under Section 288.050.2, Wal–Mart did not have to show that Gaylord's off-duty marijuana use impaired his work because Section 288.045.13 abrogated the requirement that an employer must show impairment of work performance.