Vicki WRIGHT, Appellant,

v.

CASEY'S MARKETING COMPANY
and Division of Employment
Security, Respondents.

No. WD 71996.

Missouri Court of Appeals,
Western District.

Dec. 14, 2010.

Richard B. Hankins, Kansas City, MO and John J. Ammann, Godfrey, IL, for appellant.

Kenneth P. Carp, Clayton, MO and Jeannie D. Mitchell, Jefferson City, MO, for respondents.

Before Division One: JAMES M. SMART, JR., P.J., MARK PFEIFFER, and CYNTHIA L. MARTIN, JJ.

PER CURIAM:

Vicki Wright appeals the Labor and Industrial Relations Commission's denial of her claim for unemployment benefits. The Commission denied Wright's claim on grounds that her termination was due to misconduct connected with her work. We affirm.

## Background

Appellant Vicki Wright worked for Casey's Marketing Company managing a Casey's General Store in Adrian for approximately sixteen months. She was hired in April 2008 and became a store manager after seven months.

On August 10, 2009, Casey's discharged Wright for violating the company's "Robbery Deterrent Guidelines" by leaving approximately $11,000 worth of deposits unsecured in an unlocked drawer.[1] The company's written guidelines specifically provided that deposits must be kept in a locked safe at all times except when the manager is counting the money or is ready to leave for the bank to make the deposit. The guidelines further provided that "[f]ailure to properly secure a bank deposit will result in suspension or termination." (Emphasis added.)

On the day of her termination, Wright arrived at work sometime between 4:00 and 4:30 a.m. It was a Monday morning. The weekend's receipts had not yet been deposited into the bank. Wright took the money out of the safe to count it before

[1] Casey's contends that this amounted to three days' worth of deposits; according to Wright, it was two days' worth. Both parties agree that it was approximately $11,000.

taking it to the bank. While in the midst of counting, Wright got a call from another Casey's store in Harrisonville telling her to come and pick up some produce. Instead of putting the money back in the safe before she left, she put it in an unlocked drawer in the office and closed the office door. She then left the store for about an hour and a half.[2]

While Wright was gone, her immediate supervisor, Josh Anderson, arrived at the store to do an audit. Anderson went to the file drawer in Wright's office to get paperwork for the audit. There, in a drawer that was "unlocked and accessible to anyone," he found $11,000 in deposits. When Wright returned to the store, Anderson asked her about the deposits. She admitted that she had left them unsecured despite the company's policy, and she apologized. Anderson then issued Wright a "corrective action form," which resulted in her immediate discharge.

Wright filed a claim for unemployment benefits. She did not say anything in her claim about violating the company's rule with regard to keeping cash deposits in the safe at all times. Instead, she said the reason Anderson gave for firing her was that it "[j]ust wasn't working out." She included a litany of problems she had had with her supervisor. She complained that he was "rude" and a "nit-picker," who rode her mercilessly, changed the rules arbitrarily, and constantly complained about the cleanliness of the store, among other things. When Casey's, in response to Wright's claim, brought up the fact that the deposits had been left in an unlocked drawer, Wright at first denied knowing anything about that.

A deputy with the Division of Employment Security ultimately determined that Wright was disqualified from receiving benefits, pursuant to section 288.050.2,[3] because she was discharged for misconduct connected with her work, i.e., failing to follow the company's rule on ensuring that cash is stored in the safe.

Wright appealed the deputy's decision. Following a telephone hearing, at which both Ms. Wright and her supervisor, Mr. Anderson, testified, the Appeals Tribunal also concluded that Wright was discharged for "misconduct connected with work." As a result, she was disqualified for unemployment benefits. Wright appealed to the Labor and Industrial Relations Commission. The Commission affirmed and adopted the Tribunal's decision.

Wright appeals.

### Standard of Review

■■■ "We review the Commission's decision in an unemployment compensation case pursuant to Section 288.210 to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Ahearn v. Lewis Cafe, Inc.*, 308 S.W.3d 294, 296 (Mo.App.2010). "We may modify, reverse, remand for rehearing, or set aside the Commission's decision only where: 1) the Commission acted without or in excess of its powers; 2) the decision was procured by fraud; 3) the award is unsupported by the facts found by the Commission; or 4) the record lacks sufficient competent evidence to warrant the making of the award." *Id.* In the absence of fraud, the Commission's factual findings are conclusive if supported by competent and sub-

---

**2.** The record is not clear as to whether the store was open for business during this time.

**3.** Statutory references are to the Revised Statutes of Missouri (RSMo), 2009 Cumulative Supplement, except where otherwise noted.

stantial evidence. *Id.* at 296–97; section 288.210.

■ We defer "to the Commission's resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and witness credibility." *Guccione v. Ray's Tree Serv.*, 302 S.W.3d 252, 256 (Mo. App.2010). However, whether an employee's conduct constitutes misconduct connected with work is a question of law, which this court reviews *de novo. Id.* We are not bound by the Commission's conclusions of law or its application of the law to the facts. *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008).

## Discussion

In her sole point on appeal, Wright argues that the Commission erred in denying her claim for unemployment benefits, pursuant to section 288.050.2, because she did not commit "misconduct connected with [her] work." Wright says that she "mistakenly" left the deposits in the file cabinet drawer, and, thus, her actions were not intentional but an accident. She says the record shows that her failure to secure the deposits was nothing more than "ordinary negligence," which does not constitute misconduct.

## *Misconduct*

Pursuant to section 288.050.2, a claimant is disqualified from receiving unemployment benefits if a deputy finds that the claimant "has been discharged for misconduct connected with the claimant's work[.]" *Holly v. Tamko Bldg. Prods., Inc.*, 318 S.W.3d 284, 287 (Mo.App.2010) (quoting section 288.050.2). "Misconduct," in this context, is defined as

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the

employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(23).

■ An employee's willful violation of an employer's reasonable work rule can constitute misconduct. *Noah v. Lindbergh Inv., LLC*, 320 S.W.3d 212, 216–17 (Mo. App.2010). Generally, the employer must show that the claimant *consciously intended* to do the act that was found to be a violation of the employer's policy. *See Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 268 (Mo.App.2010). Negligence can, according to the plain language of the statute, be a basis of finding misconduct only when the negligence is "in such degree or recurrence as to manifest culpability ... or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." Section 288.030.1(23).

### *The Hearing*

■ Ordinarily, a claimant for unemployment benefits must prove his eligibility. *Comeaux v. Convergys Customer Mgmt. Group, Inc.*, 310 S.W.3d 759, 763 (Mo.App.2010). However, when an employer claims that an employee was discharged for misconduct, the burden shifts to the employer to prove that by a preponderance of the evidence. *Id.* At the hearing before the Appeals Tribunal, Casey's introduced a copy of the policy it claimed Wright had violated. It is an extensive rule with multiple parts; the most pertinent part stated:

14. Managers and Assistant Managers should always place the daily deposit in

the lower locked safe before and after the store opens. The only time the bank deposit bag should be removed from the lower locked safe is when the Manager or Assistant Manager is ready to leave for the bank. Do not stand and visit or get involved with other duties while you have the bank deposit out of the safe. If something comes up and you can't leave immediately for the bank, lock the bank deposit in bottom of the safe. Never set the bank deposit down or place it anywhere other than the locked lower compartment of the safe. Failure to properly secure a bank deposit will result in suspension or termination.

Mr. Anderson testified at the hearing that Ms. Wright acknowledged leaving the deposits in the unlocked drawer. A surveillance videotape also confirmed that Ms. Wright left the deposits unsecured. According to Anderson, Wright told him she "knew [the deposits] were not supposed to be in the drawer and that she was sorry." She indicated to him that it was easier to put the deposits in the file drawer than in the safe. Anderson stated that he believed Wright's actions amounted to "negligence." Anderson said that Wright's failure to secure the deposits was a serious safety violation that increased the potential of being robbed and warranted immediate termination.

Ms. Wright testified that she was made aware of Casey's policy regarding bank deposits when she trained to become a store manager. She knew it was never acceptable to put bank deposits anywhere but in the safe. She said she "was in a hurry to try to get to the other store to pick up our produce" and "*mistakenly* left [the deposits] in the bottom of the file cabinet drawer in the office with the office door shut." (Emphasis added.) She said she did not return the deposits to the safe, because "I was just in a hurry to try to get back so that our food line could open." Wright said that she initially told the deputy she did not know anything about cash receipts being left in a drawer because that was not the reason she was given for the termination and because she "forgot" that the deposits were left in the drawer.

The Appeals Tribunal found that Casey's met its burden of showing that Wright's actions amounted to misconduct connected with work. The Tribunal explained that "[a]n employer has the right to expect its employees to adhere to cash-handling policies" and to "take appropriate measure to safeguard the employer's assets." The Tribunal concluded that Wright's actions were neither *accidental,* in that "the money was deliberately placed in the drawer," nor "merely *negligent,*" in that her actions "were of such degree as to manifest culpability." "Despite the claimant's characterization of her action … as a 'mistake,'" the Tribunal found, "the evidence demonstrates willful intent," in that she knew the policy, and yet "chose not to place the money in the safe as directed by the policy, but in a place prohibited by adherence to that policy."

### Analysis

■ According to Wright, "the sole issue is whether [her] actions were purely negligent or if they rose to the level of an intentional act" that would disqualify her from unemployment benefits. She cites cases which suggest that "ordinary negligence," on its own, cannot constitute "misconduct." *See, e.g., Yellow Freight Sys. v. Thomas,* 987 S.W.2d 1, 4 (Mo.App.1998) ("An isolated act of simple negligence is not, as a matter of law, misconduct connected with work."). Wright says her testimony that she made a "mistake" and Anderson's testimony that he believed her actions constituted "negligence" both show

that her failure to secure the deposits in the safe constituted "ordinary negligence," not "misconduct."

We disagree with the notion that the Commission's determination is bound by Mr. Anderson's use of the word "negligence," as though he necessarily meant mere negligence or simple negligence as that concept has been described in some of our cases. The Commission presumably interpreted his remark as referring to Wright's failure to observe an employer's work rule that the employer considered extremely important, so important that the employer placed great emphasis on the rule and stated that the violation thereof "will result" in suspension or termination.

■ The characterization of Wright's conduct in leaving the deposits in the file drawer is an issue determined by the facts as found by the Commission and not by the terms used by the witnesses. The Commission made specific factual findings that this was not a "mistake," "accidental," or "merely negligent." "As the trier of fact, the Commission may choose to believe or disbelieve all or none of the testimony of any witness." *Scrivener*, 304 S.W.3d at 266. In the absence of fraud, we defer to the Commission's factual findings if they are supported by substantial and competent evidence in the record. *Id.;* section 288.210. The Commission's findings are supported by the evidence, because Wright's testimony shows that she knew the company's policy but purposely acted in violation of it.

The Division cites two analogous cases, in which the appellate court rejected the claimants' argument that their failure to follow the employer's policy was mere negligence and held that because the claimants were aware of the policy, and deliberately violated that policy, their actions constituted misconduct. In *Koret of California, Inc. v. Zimmerman*, 941 S.W.2d 886 (Mo.App.1997), the manager of a clothing store failed to comply with the employer's policy requiring all nightly deposits to be reconciled by a second person and all deposit slips to be signed by two people. *Id.* at 888–89. The claimant testified that she was aware of the policies but did not have enough time to count the nightly deposits, so she delegated the duties to other employees. *Id.* at 887. The court found that the claimant "deliberately disregarded" her employer's reasonable rules, of which she was aware, and that those actions, along with various other failings, justified a finding of misconduct. *Id.* at 889. In *Hurlbut v. Labor & Industrial Relations Commission*, 761 S.W.2d 282 (Mo.App.1988), a laundromat manager was discharged for failing to follow the employer's rule to document any money removed from the cash box on a calculator tape and to put that tape in the cash box. *Id.* at 283. On the day the claimant was discharged, money had been removed but there was no calculator tape in the cash box. *Id.* The claimant admitted that she did not prepare the tape because she did not have enough time. *Id.* at 283–84. The court explained that it was the claimant's responsibility to insure that the policy was followed regardless of time constraints. *Id.* at 285.

Like the claimants in those cases, Wright admitted that she was fully aware of Casey's policy and that she violated that policy. Despite her need to hurry to pick up an order at the Harrisonville store, Wright had a duty, as the manager, to insure that the policy was followed. *See id.* A significant amount of unsecured cash in a convenience store is, of course, a magnet for trouble, regardless of the reason the cash was not secured. Wright points out that in *Koret* and *Hurlbut*, there was more than one violation of the employer's policy. Even so, nothing in those

cases indicates that a single violation of an important company policy, especially one that conceivably could contribute to the risk of robbery, putting lives in jeopardy, cannot constitute misconduct.

Even if Wright's action here is described as negligence, it would not be mere negligence, such as would be the case if she had inadvertently spilled mustard or chocolate syrup on the receipts to be deposited; rather, it would be negligence of such degree (in light of the importance and the strictness of Casey's policy) "as to manifest culpability . . . or show an intentional and substantial disregard of the employer's interest." Casey's did not have to terminate Wright, of course, but the company *did* terminate her (in accordance with a policy that said such failure "will result in suspension or termination"), and it terminated her for culpable actions, not for inadvertent actions.

■ An employer has the right to place priority emphasis on the security of cash receipts. A whole host of problems, including theft, robbery, and attendant danger to human life can flow out of the careless failure to secure the funds. Wright left the money in the unlocked drawer for an hour-and-a-half. As it turned out, no unauthorized person got their hands on the receipts, and the money was discovered by Mr. Anderson when he came to do an audit. But the actions violated the portion of the policy stating that "[i]f something comes up and you can't leave immediately for the bank, lock the bank deposit in the bottom of the safe." Casey's did not intend for this to be an optional rule or a general guideline to be followed when the manager is not in too much of a hurry. Casey's had a substantial interest in protecting its deposit money, and Ms. Wright willfully and intentionally acted contrary to those interests.

■ When Wright applied for benefits, she indicated that she was discharged for minor bookkeeping errors. She initially denied to the deputy knowing anything about the cash receipts being left in the unlocked drawer. This fact, and the attitude expressed toward her supervisor in her correspondence with the deputy, reflected poorly on her respect for her employer. The Commission could have believed that this tended to reflect that she did not take the employer's interests seriously and did not respect the employer's rule. Although misconduct is an issue of law, where there are inferences to be drawn (such as whether she took the employer's rule seriously and respected the employer's interests, and whether the rule was really important to the owner), we grant reasonable deference to the Commission.

The Commission's determination that Wright was guilty of misconduct was supported by substantial and competent evidence in the record. The Commission did not, therefore, err in finding that Wright was disqualified from receiving benefits. Point denied.

### Conclusion

The judgment is affirmed.