Cynthia BRIDGES, Claimant–Appellant,

v.

MISSOURI SOUTHERN STATE UNIVERSITY, Employer,

and

Division Of Employment Security, Respondent.

No. SD 31323.

Missouri Court of Appeals, Southern District, Division Two.

March 9, 2012.

James M. Owen of Springfield, MO, for Appellant.

Laura J. Johnson of Springfield, MO, for Employer.

Bart A. Matanic of Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Cynthia Bridges (Employee) appeals from a decision by the Labor and Industrial Relations Commission (Commission) that she was disqualified for unemployment benefits. The Commission determined that Employee had been discharged for misconduct connected with her work. *See* § 288.050.2.[1] On appeal, Employee argues that the Commission's decision was not supported by competent and substantial evidence because the evidence upon which the Commission relied was hearsay. Because we find that Employee waived this argument and that Employee committed misconduct connected with work, we affirm.

## I. Standard of Review

■ Review of the Commission's decision is governed by constitutional provision and by statute. *Finner v. Americold Logistics, LLC,* 298 S.W.3d 580, 581 (Mo.App. 2009). The Missouri Constitution directs this Court to determine whether the Commission's decision is "authorized by law" and whether it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18; *Finner,* 298 S.W.3d at 581. Pursuant to § 288.210 RSMo (2000),

> we may modify, reverse, remand for rehearing, or set aside the decision of the Commission only where: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award.

*Freeman v. Gary Glass & Mirror, L.L.C.,* 276 S.W.3d 388, 390–91 (Mo.App.2009). "In determining whether the Commission's decision is authorized by law, we are not bound by its conclusions of law or its application of law to the facts." *Finner,* 298 S.W.3d at 581. While we defer to the Commission on issues of credibility and weight of the evidence, "[t]he issue of whether an employee's actions constitute misconduct related with work is a question of law," which we review *de novo. Freeman,* 276 S.W.3d at 391.

## II. Factual and Procedural Background

Employee worked as an accounting specialist for Missouri Southern State University (Employer) for many years. On July 29, 2010, Employee received a written warning from one of her supervisors regarding dishonesty, unprofessional behavior, and "[i]nability to complete tasks timely[.]" Among other things, the warning specifically mentioned her delay in returning a $25 "audit item." The warning cautioned Employee that return of "funds

---

**1.** All references to statutes are to RSMo Cum. Supp. (2009) unless otherwise indicated.

is a pressing issue[.]" The warning also reminded Employee that as an accountant she was expected "to perform [her] duties in accordance with standard accounting principles and pertinent regulations in an accurate and timely manner." Employee signed the document, acknowledging receipt of the warning, but noted that she did "not agree with all statements in this document."

In late October 2010, Employee "submitted a check request for payment of $10,994.24 to U.S. Department of Education." This check was to reimburse the Department of Education for overpayments that had been made. Employee's supervisor reviewed the documents and determined that some of the overpayments dated back several years. Employee's supervisor emailed Employee and asked how many people still needed to be reimbursed. Employee replied that there were 105 people who had not been reimbursed and that some of the accounts dated back to 2002.

On November 5, 2010, Employee was discharged from her employment. Employee applied for unemployment benefits, and a deputy of the Division of Employment Security determined that Employee was not eligible for benefits because she had been discharged for misconduct connected with work.

Employee appealed, and a hearing was held before a referee of the Appeals Tribunal on January 24, 2011. At the beginning of the hearing, Employer offered a set of documents (collectively, Employer's Exhibit 1) into evidence which included, among other things, memoranda regarding the warnings Employee had received and the email in which Employee had admitted the situation regarding the 105 people who still needed to be reimbursed. Employee objected to the admission of Employer's Exhibit 1 on the grounds that the documents it contained were "false and misleading."

The following exchange occurred between Employee and the referee regarding Employee's objection:

[Referee]: Okay. What's false about them? Are they—are they the—like for instance, if there is—there is a copy of an email in here that was between you and someone else. Did you get and recei—send and receive that email or didn't you?

[Employee]: Yes, I did send and receive—

[Referee]: Okay. Then—

[Employee]:—(unintelligible)—

[Referee]: Then it—that document is not false and misleading. Correct?

[Employee]: (No audible reply).

[Referee]: Do you see what I'm saying? I'm asking you—whe—when you say things are false, that needs to have a specific meaning.

[Employee]: Ma'am, the contents are.

[Referee]: Okay. Somebody made up that email and put your name on it?

[Employee]: No.

[Referee]: Okay. We're gonna table this for right now. We will go through these documents in the testimony. You cannot say they're false if they are not false. Okay? We will have to discuss those under oath.

[Employee]: Okay.

Employer's Director of Human Resources (HR Director) then testified. She stated that Employee's supervisors would not be testifying because "[i]t was felt that the documents spoke for themselves." The HR Director briefly recounted that Employee had been made aware of the deficiencies in her performance and that problems continued to occur, including the failure to process numerous payments amounting to $11,000.

Employee testified that she was fired on November 5, 2010. On that day, she met with her supervisors and the HR Director. Employee identified the November 5th memorandum contained in Employer's Exhibit 1 and stated that on the day she was fired, the HR Director went over with her everything in that document. Employee admitted she had been warned as recounted in the memorandum, but asserted that after those warnings, she "had been making every attempt to get things out timely." She went on to clarify "that my version of timely and theirs are two different things." Employee asserted that the guidelines were set by the federal government and that "the Federal Government didn't even know that these funds were owed back to them." Employee believed that made it okay to not repay the funds. She said an allegation that she failed to timely process two veterans' accounts was not true because after one of the veterans "made a ruckus with" her supervisor, she processed the accounts. She testified that she typically did not process those accounts until the end of the semester because "[t]hat was my procedure[.]" She had established that policy over the years working with veterans' counselors from other agencies. Employee asserted that her supervisors "did not understand all of the ramifications of the job that I was performing."

Near the end of Employee's testimony, the referee returned to the topic of Employer's Exhibit 1. The referee stated "your objection to these—these documents they've provided is not so much the information that they have provided as that it doesn't tell the whole story. It leaves a—a false impression in your mind." Employee agreed that was correct. The referee overruled the objection and admitted the packet of documents. The referee then noted that time was running out, and asked Employee if she wanted to continue the hearing to give her more time to discuss the situation. Employee replied "I think I've said probably all I need to say[.]"

The Appeals Tribunal concluded that Employer had met its burden of proving that Employee was discharged for misconduct associated with work. The decision noted the warnings Employee had received as well as the unprocessed reimbursements and Employee's excuses for failing to timely process those payments. The referee concluded:

> The claimant knew how to do her job, and she knew what the job expectations were. The claimant developed her own way of doing things, on her own timeline, and she continued to do things her way, even after being disciplined and given explicit instructions regarding the performance of her duties. The claimant, by failing to process overpayments in a timely manner, deprived students, graduates, and governmental entities of money that rightfully belonged to them. In the cases of the student veterans, the claimant denied them their funds because it was easier to make them wait.

Employee appealed the decision to the Commission, and the Commission adopted the decision of the Appeals Tribunal as its own. This appeal followed.

### III. Discussion and Decision

■ In Employee's single point on appeal, she argues that the ruling of the Commission was not supported by the evidence "because the only purported evidence of misconduct were hearsay documents, the Referee declared the document[s] to be hearsay, and [Employee] properly objected in that she did not waive her right to have substantial competent evidence used in the hearing." We disagree.

The resolution of this appeal requires us to consider two issues. First, we must determine whether Employee waived her objection to the introduction of the documents. The result of that analysis will determine the nature of the second portion of the analysis. If we determine that the objection was not waived, we must consider whether the documents fell within an exception to the hearsay rule or whether there was sufficient competent and substantial evidence outside the documents to support the Commission's ruling. *See Wilson v. Q Stop III*, 268 S.W.3d 467, 469–70 (Mo.App.2008) (assessing the remaining evidence to determine whether misconduct had occurred after deciding that the employer's evidence was hearsay and that a sufficient objection had been made). If, on the other hand, we determine that the documents were properly before the Commission, we must consider whether those documents met Employer's burden to prove that Employee committed misconduct connected with work. *See Bostic v. Spherion Atlantic Workforce*, 216 S.W.3d 723, 724 (Mo.App.2007) (rejecting a hearsay argument on the basis that the employee failed to object before determining whether the employer had demonstrated misconduct). We believe Employee waived her objection to Employer's Exhibit 1 and that the documents in that exhibit, when combined with Employee's admissions at the hearing, provided sufficient competent and substantial evidence that Employee was discharged for misconduct connected with work.

■ The conduct of administrative hearings regarding unemployment compensation is governed by 8 CSR 10–5.015(10).[2] Specifically, "[t]he hearing need not be conducted according to the common law or statutory rules of evidence or the technical rules of procedure. Hearsay evidence is generally admissible." 8 CSR 10–5.015(10)(B)4. However, "hearsay evidence and conclusions based upon hearsay do not qualify as 'competent and substantial evidence on the whole record[.]'" *Wilson*, 268 S.W.3d at 469. Thus, where a party objects to hearsay evidence, it will not support the Commission's findings. *Id.*

■ Nevertheless, "[a]ny evidence received without objection which has probative value shall be considered by the hearing officer along with other evidence in the case[.]" 8 CSR 10–5.015(10)(B)4. Parties to an administrative hearing may waive objections to hearsay "for reasons of trial strategy or other cause [and] such hearsay evidence may then be considered as substantial and competent for purposes of the agency's findings." *Helfrich v. Labor and Indus. Relations Comm'n*, 756 S.W.2d 663, 666 (Mo.App.1988); *Jenkins v. George Gipson Enterprises, LLC*, 326 S.W.3d 839, 842 (Mo.App.2010).

In the present case, Employee's actions demonstrate that she waived any hearsay objection she may have raised by initially declaring that the documents were false and misleading. After stating that the materials in Employer's Exhibit 1 were false, she admitted that she was the person who sent the emails contained in the packet. At the end of the hearing, she agreed that the documents were accurate but simply did not tell the whole story. However, when offered an opportunity to present additional evidence, Employee declined. Any objection to the admission of the documents was waived by this conduct.

Admittedly, there are a number of cases which hold that "a statement by a claimant that hearsay testimony is false 'cannot in any way be interpreted as a waiver of

---

**2.** All references to the Code of State Regulations, specifically to 8 CSR 10–5.015, are to the current version dated 9/30/11.

claimant's right to substantial and competent evidence' despite not rising to the level of an objection to hearsay or motion to strike." *Jenkins*, 326 S.W.3d at 842; *see Hill v. Norton & Young, Inc.*, 305 S.W.3d 491, 494 (Mo.App.2010); *Helfrich*, 756 S.W.2d at 666. However, those cases differ from the present case in at least one important respect. In those cases, the objection to the evidence or the statements from which such objection could be inferred stood alone. *Jenkins*, 326 S.W.3d at 843 (claimant's denial of the operative facts implied an objection); *Hill*, 305 S.W.3d at 494 (claimant made statements from which an objection could be inferred); *Helfrich*, 756 S.W.2d at 666 (claimant said "he's lying"). Here, in contrast, when the referee asked Employee for clarification, Employee admitted she had sent the emails in Employer's Exhibit 1. Later, during her testimony, Employee identified one of the other documents as the one she had received on the day she was terminated. She admitted receiving the warnings described in the documents and declined the opportunity to present further evidence even though the true nature of her objection was that the documents did not tell the whole story.

Employee's decision not to present further evidence after agreeing that the documents were only "false" because they were incomplete, created a situation where it could reasonably be inferred that she had waived her objection. Despite the informality of administrative hearings, any other conclusion would require hearing officers to become not only mind readers, but also advocates for the parties appearing before them. That role is not appropriate for an adjudicative officer.

Employee's statements during and after the hearing waived her objection to Employer's Exhibit 1. The referee properly admitted, and the Commission properly considered, Employer's Exhibit 1.

■ The remaining question, then, is whether Employee committed misconduct connected with work when she failed to process overpayments in a timely manner. "Although the burden of proving eligibility for unemployment compensation benefits initially lies with the claimant, once an employer alleges that the claimant was discharged for misconduct connected with work, the burden shifts and the employer must demonstrate such misconduct." *Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 391 (Mo.App.2009). Under Missouri's unemployment compensation law, misconduct is defined as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such a degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

§ 288.030.1(23). "Generally, the employer must show that the claimant *consciously intended* to do the act that was found to be a violation of the employer's policy." *Wright v. Casey's Marketing Co.*, 326 S.W.3d 884, 887 (Mo.App.2010) (emphasis in original). While negligence and incompetence generally do not qualify as misconduct, "a single instance of intentional disobedience of an employer's directive constitutes misconduct as defined by section 288.030[.1](23)." *Freeman*, 276 S.W.3d at 392.

■ An employee's failure to follow procedure regarding the handling of funds, even if it occurs on only one occasion, is sufficient to support a finding of misconduct associated with work. *See Wright*, 326 S.W.3d at 888–89. In *Wright*, for ex-

ample, the employer operated a number of stores, and the claimant was a store manager. *Id.* at 885. The employer's guidelines provided that the daily deposits had to be kept in the safe at all times unless the money was being counted or taken to the bank. *Id.* On the day she was terminated, the claimant arrived at work and took the money out of the safe to count it. *Id.* at 885–86. She was interrupted in the middle of counting the money, and instead of putting the money back in the safe, she put it in an unlocked drawer, where her supervisor discovered it a short time later. *Id.* at 886. Because the claimant was aware of the policy and because of the serious nature of the duty to secure the deposits, the claimant's actions constituted misconduct associated with work. *Id.* at 889–90.

The present case also involves an employee who knew her duties and the serious obligation to properly care for the funds of others. Employee had been warned that delay in processing reimbursements was not acceptable. Yet, by her own admission, she was responsible for 105 overpayments that had not been processed, some of which were several years old. Her primary reason for failing to process one set of payments was that the true owners of the funds "didn't even know that these funds were owed back to them." This attitude exemplifies a disregard of the standards of behavior an employer has the right to expect when it comes to handling funds. *Wright,* 326 S.W.3d at 890.

We deny Employee's point and affirm the Commission's decision denying Employee's claim for unemployment benefits.

BARNEY, J. and FRANCIS, P.J., Concur.