

# Missouri Court of Appeals

### Southern District

### Division Two

DAVID JACKSON,                                )
                                             )
    Claimant-Appellant,            )
                                             )
    vs.                             )    No. SD33461
                                             )
EAGLEPICHER TECHNOLOGIES, LLC, )    **Filed:  December 24, 2014**
                                             )
    Employer-Respondent,           )
                                             )
and MISSOURI DIVISION OF           )
EMPLOYMENT SECURITY,               )
                                             )
    Respondent-Respondent.         )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### AFFIRMED

David Jackson ("Claimant") appeals a decision of the Labor and Industrial

Relations Commission ("Commission") that denied him unemployment benefits on the

ground that EaglePicher Technologies, LLC ("Employer") discharged him for

misconduct connected with his work.  Claimant raises two points in this appeal:  (1) that

the Commission erred as a matter of law in finding that Claimant was discharged for

misconduct connected with his work because Employer did not apply its written policy

"in a fair and even manner," and (2) that the Commission erred in finding that Claimant

1

was discharged for deliberately violating Employer's written policy because that violation involved a "single act" and was "a mere pretext for the Employer to discriminate against [Claimant] by discharging him because of his position with, and activities on behalf of, the Union." With due regard to our standard of review, we affirm the Commission's decision.

## Facts and Procedural History

On January 14, 2014, Claimant filed a claim for unemployment benefits following his discharge by Employer. Employer protested Claimant's claim on the ground that Employer "[s]uspended [Claimant] for violating employee conduct policy" in that Claimant was "eating in a production area (unauthorized)," and "[h]ad been previously warned about eating in his work area (2008)." A deputy for the Missouri Division of Employment Security determined that Claimant was disqualified for unemployment benefits because Employer discharged Claimant for misconduct connected with Claimant's work.

The following evidence was presented. Employer hired Claimant in June 1981; Claimant was suspended on January 10, 2014, and discharged on January 13, 2014. At the time he was suspended and then discharged, Claimant "was a group leader of the parts fabrication area" in Employer's business, which "produce[s] . . . medical and aerospace and defense batteries."

Employer received:

an anonymous complaint that several employees that worked in the same area as [Claimant] did--were eating and not working in the dry room area. It specifically mentioned [Claimant] and another employee in that area.

2

A review of surveillance film confirmed the complaint. The surveillance film showed Claimant eating chips in the dry room on January 9, 2014, and, at the hearing, Claimant admitted he did so. Claimant's conduct violated Employer's written policy and Claimant had received a written warning in June 2008, that eating in the dry room was prohibited.[1] Employer claimed it is "important not to eat in the dry room" because a "chemical" used in the dry room could explode and a single particle of food could "affect the quality of the batteries" manufactured.

The policy was in the employee handbook, and was "mentioned [in the employee handbook] as . . . a serious violation." The policy was last revised in July 2012, and provided that "[f]ood or drink in unauthorized areas" is a "serious[] violation[], which may be grounds for immediate dismissal." The policy also was posted inside a glass bulletin board located "outside the area where [Claimant] worked." "[T]he areas where [employees] are not to eat are clearly marked." Employer discharged Claimant for violating the policy by eating in the dry room. Earlier in the claim process, Employer told a deputy over the telephone "[t]he fact that [Claimant] is the union president did not have anything to do with why he was fired for this."

Claimant testified "[i]t's not--it's--eating chips was not as dangerous as liquids. Liquids will cause the explosion." Claimant also testified that other employees "eat[] in the dry room including the foreman and the supervisor" and Claimant's supervisor brought "candy bars" into the dry room to sell, and, if Employer believes eating food in the dry room may affect the quality of the batteries produced, "it's going to be a problem allover the plant. Because every area eats." Claimant's prior warning was limited "to bring[ing] . . . liquids into any of [Employer's] dry rooms." Claimant acknowledged that

---

[1] Claimant claims his warning was for liquid in the dry room.

3

the written policy was "updated" after 2009 to prohibit "food or drink in an unauthorized area." Claimant also stated "I'm thinking everybody's probably was aware [you were not supposed to eat or drink in the dry room] but everybody does it."

Earlier in the claim process, Claimant told a deputy over the telephone "[t]he area in which I was supposed to have been eating was an area that is officially designated as an area in which you cannot eat. I cannot remember eating anything in there other than a piece of candy that I might pop in my mouth from time to time and keep working like everybody else did or a piece of gum." Claimant also told the deputy over the telephone:

> I would never have a cookie or anything like that as I knew that was a no eating area and a piece of candy or gum did not interrupt the work flow. I never had anything to drink in there as that is an area where lithium is used and you just can't have any liquids in there. I knew this as well. Nobody ever told us we couldn't have a piece of candy or gum prior to this. Management would also have a piece of gum in their mouth when they were in this area as well. I always ate my lunch in the lunch room like everybody else and I have no idea what they're talking about. All I was told was that I was being let go for eating something in the work area. I did not see or sign any paperwork. I don't know when the incident was to have happened. . . . I take blood pressure meds, cholesterol meds, some stomach pills and water pills. If I needed to go get some food on my stomach and sometimes I'd during work hours I would have to go take one of my meds and I would need to eat some crackers or something like that. But whenever I did that, I left this area.

Claimant also called Teresa Buckmaster as a witness. Buckmaster was the President of the local union, and had worked with Claimant "for years." Claimant was Vice-President of the local union. Buckmaster remained employed by Employer at the time of the hearing. Buckmaster testified that other employees, including supervisors, eat in work areas and not all employees who do so are discharged. An employee in human resources told Buckmaster that Employer determines the discipline for eating in a work area on a "case by case basis." Employer wants "to get rid of the union," and union

4

officers "are walking around with a target on [their] back." "[S]nitch[es]" and "anti-union" employees "can pretty much do whatever you want to and they won't do anything to you."

On April 7, 2014, the Appeals Tribunal concluded that Claimant was disqualified for unemployment benefits because he was discharged on January 13, 2014, for misconduct connected with his work. In so deciding, the Appeals Tribunal made the following credibility determination and findings of fact:

> The claimant's version of the circumstances surrounding the work separation and that of the employer were mostly contradictory. However, the Tribunal finds that the employer was more persuasive since the employer's statements were more consistent, logical, and more likely to reflect what occurred. . . .
>
> The employer had a conduct policy that prohibited having food or drink in unauthorized areas . . . . The policy stated that having food or drink in an unauthorized area was a serious violation that could result in immediate dismissal. The claimant was made aware of the policy through a revised manual, postings and through a prior warning.
>
> The employer initiated an investigation after at least one of the claimant's co-workers made an anonymous complaint that the claimant was eating in a production area. . . . The claimant was suspended and then discharged as a consequence of the policy violation.
>
>    . . . .
>
> . . . [Employer's] policy was reasonable because eating in a production area could pose a danger to the employer and/or cause the employer's batteries to fail. . . .
>
> The competent and substantial evidence was that the claimant deliberately ate chips in a production area. The claimant ate the chips because he was hungry. An intentional violation of a known and reasonable work rule equates to misconduct.

5

Following Claimant's application for review by the Commission, the Commission, on July 2, 2014, issued a decision affirming and adopting the decision of the Appeals Tribunal and stating:

> At the hearing claimant admitted to eating chips in an unauthorized area. Claimant also admitted that the area he was in . . . was officially designated as an area in which eating was forbidden. Claimant's statement that "eating chips is not as dangerous as liquids" shows us that claimant understood that eating chips in that work area was dangerous (even if it is less dangerous than a liquid). Claimant's own statements establish misconduct in this case.

Claimant now appeals the Commission's decision.

## Standard of Review

In *Fendler v. Hudson Services*, 370 S.W.3d 585, 588-89 (Mo. banc 2012), our Supreme Court described our standard of review as:

> Article V, section 18 of the Missouri Constitution provides for judicial review of the commission's decisions to determine whether they "are supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. Under section 288.210:
>
> > The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
> >
> > (1) That the commission acted without or in excess of its powers;
> >
> > (2) That the decision was procured by fraud;
> >
> > (3) That the facts found by the commission do not support the award; or
> >
> > (4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall

6

not act as a supersedeas or stay unless the commission shall so order.

§ 288.210. "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony," *Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995), but in so doing it does not view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton*, 121 S.W.3d at 223. This Court reviews questions of law de novo, and "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." *Tenge v. Washington Grp. Int'l, Inc.*, 333 S.W.3d 492, 496 (Mo.App.2011); *accord Ahearn v. Lewis Café, Inc.*, 308 S.W.3d 294, 297 (Mo.App.2010).

"In general, a claimant bears the burden of demonstrating that [he or she] is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected to work [by a preponderance of the evidence]." Rush v. Kimco Corp., 338 S.W.3d 407, 411 (Mo.App.2011); *accord Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App.2005)[; *Ahearn*, 308 S.W.3d at 297].

**Analysis**

Under section 288.050.2, RSMo Cum.Supp. 2014, a claimant is disqualified for unemployment benefits if the claimant was "discharged for misconduct connected with the claimant's work." Misconduct is defined in section 288.030.1(23), RSMo Cum.Supp. 2006, as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

7

For each of these categories, the only mental state required for a particular category is the mental state set forth in the statute for that category. *Seck v. Department of Transportation*, 434 S.W.3d 74, 83 (Mo. banc 2014). "[D]eliberate" as used in the second category means intentional, premeditated, fully considered. *Tamko Building Products, Inc. v. Pickard*, 443 S.W.3d 68, 74 (Mo.App. S.D. 2014); and *Wooden v. Division of Employment Security*, 364 S.W.3d 750, 754 n.3 (Mo.App. W.D. 2012). Further, "intentional" as used in this definition requires the employee to be "aware" of the rule and to "knowingly or consciously" violate the rule. *Tamko*, 443 S.W.3d at 74. An employee's past history is relevant in determining the employee's mental state, *Id.* at 74-75, although "[a] single instance of intentional disobedience of an employer's directive can constitute misconduct." *Id.* at 73 (internal citation and quotation omitted); *see also* **Bridges v. Missouri Southern State University**, 362 S.W.3d 436, 442 (Mo.App. S.D. 2012) ("a single instance of intentional disobedience of an employer's directive constitutes misconduct") (internal citation and quotation omitted); and *Wooden*, 364 S.W.3d at 755 n.7 ("intentional action . . . constitutes misconduct").

Section 288.020, RSMo 2000, makes clear that Missouri's employment security law was enacted "under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own," and provides the law "shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs . . . and by providing for the payment of compensation to individuals in respect to their unemployment." Our Supreme Court has indicated that disqualifying provisions of the employment security law are construed strictly against the disallowance of benefits, and

8

the statute's words are given their plain and ordinary meaning. ***St. John's Mercy Health System v. Division of Employment Security***, 273 S.W.3d 510, 514 (Mo. banc 2009).

*Point I*

Claimant's first point asserts that the Commission erred as a matter of law in finding that Claimant was discharged for misconduct connected with his work because Employer did not apply its policy "in a fair and even manner." Claimant was discharged on January 13, 2014, and filed his claim for unemployment benefits on January 14, 2014. At that time,[2] Employer only was required to show that Claimant's conduct was "a deliberate violation of the employer's rules." Section 288.030.1(23), RSMo Cum.Supp. 2006.[3] Competent and substantial evidence on the whole record showed Claimant's conduct in eating chips in the dry room was a "deliberate violation" of Employer's written rules – i.e., (1) Claimant, at the hearing before the appeals referee, admitted that he ate chips in the dry room, and acknowledged "I'm thinking everybody's probably was aware [you were not supposed to eat or drink in the dry room] but everybody does it;" and (2) Claimant told the deputy:

> [t]he area in which I was supposed to have been eating was an area that is officially designated as an area in which you cannot eat. I cannot remember eating anything in there other than a piece of candy that I might pop in my mouth from time to time and keep working like everybody else did or a piece of gum,

and:

> I would never have a cookie or anything like that as I knew that was a no eating area and a piece of candy or gum did not interrupt the work flow. I never had anything to drink in there as that is an area where lithium is used and you just can't have any liquids in there. I knew this as well. . . .

---

[2] Effective August 28, 2014, a violation of an employer's rule is not misconduct if the employee can demonstrate that the rule "is not fairly or consistently enforced." Section 288.030.1(23)(e)c, RSMo Cum.Supp. 2014.

[3] Claimant does not argue that the change in the definition of misconduct should be applied retroactively.

I always ate my lunch in the lunch room like everybody else and I have no idea what they're talking about. . . . I take blood pressure meds, cholesterol meds, some stomach pills and water pills. If I needed to go get some food on my stomach and sometimes I'd during work hours I would have to go take one of my meds and I would need to eat some crackers or something like that. But whenever I did that, I left this area.

From this evidence, the Commission reasonably could have inferred that Claimant made a fully considered and intentional choice to leave the dry room, obtain chips and then return to the dry room to eat the chips in violation of Employer's known and written rules – i.e., Claimant committed a "deliberate violation" of Employer's rules. *See **Ernst v. Sumner Group, Inc.**, 264 S.W.3d 669, 672-73 (Mo.App. E.D. 2008) (pre-August 28, 2014, the fact that everyone else is doing it does not justify an employee's deliberate violation of an employer's rule).

The Commission's adoption of the Appeals Tribunal's finding that "[t]he competent and substantial evidence was that the claimant deliberately ate chips in a production area" is supported by the record as a whole. Claimant's first point is denied.

*Point II*

Claimant's second point contends that the Commission erred in finding that Claimant was discharged for deliberately violating Employer's written policy because that violation involved a "single act" and was "a mere pretext for the Employer to discriminate against [Claimant] by discharging him because of his position with, and activities on behalf of, the Union." We do not address whether the firing was pretextual in our review. Our review is whether competent and substantial evidence supports the finding that Claimant deliberately violated Employer's rules.

10

As discussed above, "[a] single instance of intentional disobedience of an employer's directive can constitute misconduct." ***Tamko***, 443 S.W.3d at 73 (internal citation and quotation omitted).

Second, the Commission adopted the Appeals Tribunal's findings that (1) "the employer was more persuasive since the employer's statements were more consistent, logical, and more likely to reflect what occurred," and (2) "[t]he claimant was suspended and then discharged as a consequence of the policy violation [-- i.e. eating food in an unauthorized area]." In light of the Commission's determination that Employer was more credible, the Commission's finding that Claimant was "discharged as a consequence of" eating food in an unauthorized area is supported by competent and substantial evidence on the whole record. Claimant's second point is denied.

The Commission's decision is affirmed.


Nancy Steffen Rahmeyer, P.J. – Opinion Author

Gary W. Lynch, J. – Concurs

Mary W. Sheffield, P.J. – Concurs